IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN HENRY KOONTZ and<br>LILLIAS MATHIE KOONTZ,<br><br>      Plaintiffs,<br><br>v.<br><br>CSAA FIRE & CASUALTY<br>   INSURANCE COMPANY,<br><br>      Defendant. | Case No. CIV-18-801-SLP |

**O R D E R**

Before the Court is Defendant's Motion to Exclude the Testimony of Plaintiffs' Claim-handling/Bad Faith Expert, Richard N. Cary, or in the Alternative, Motion *in Limine* to Limit Mr. Cary's Testimony [Doc. No. 30]. The motion is at issue. *See* Resp., Doc. No. 32.[1] Mr. Cary, an insurance adjuster, is Plaintiffs' proposed expert witness who will testify regarding "claims handling and insurance industry standards." Pls.' Expert Witness List, Doc. No. 26.

**I.     Background**

Plaintiffs' lawsuit—a first-party insured-insurer dispute involving breach of contract and breach of the duty of good faith and fair dealing claims—relates to shingle

---

[1] Plaintiffs' counsel is reminded to comply with Local Civil Rule 7.1(n) in future filings: "No response . . . brief shall include an exhibit or attachment that is already included with the motion under consideration; reference shall instead be made to the exhibit or attachment to the motion under consideration, including the ECF Document Number." *Compare* Expert Report of Richard Cary, Doc. No. 30-1, *with* Expert Report of Richard Cary, Doc. No. 32-2. Future filings that violate Local Civil Rule 7.1(n) may be stricken.

damage on the roof of their home. *See* Compl., Doc. No. 1. Defendant is Plaintiffs' homeowners' insurer. Plaintiffs claim that Defendant inadequately investigated their insurance claim and inadequately compensated them for roof damages for which their homeowners' insurance policy provided coverage without a reasonable basis for doing so. *See id.* Plaintiffs also claim that Defendant's adjuster caused permanent damage to their roof during his inspection of it. *See id.*

Mr. Cary indicates that his testimony at trial will include the following opinions: (i) "[i]t has long been held that granule loss caused by a hail impact equals a damaged shingle constituting loss" because "exposing the mat of the shingle to UV light will lessen the life of the shingle and . . . hail impacts causing granule loss like those seen on the Koontz roof decrease[] the value of the home," (ii) "[t]hat hail impacts on a composition shingle affect the value of the roof is an additional reason why it is unreasonable to lift a shingle to inspect the backside [of it]," (iii) "if [an] adjuster sees a mark on the face of [a] shingle and he/she 'cannot rule out hail,' the insurance company must pay for repair or replacement of the roof at that point because marks caused by hail impacts are damage . . . . [which] cause[] loss of value," (iv) "[t]here is no mention of 'functional' or 'cosmetic' damage mentioned in the insurance contract" and "[i]t is unreasonable [for an insurer] to add wording to a policy after a loss occurs in order to save money," (v) "Defendant unreasonably did not include payment for general contractor's overhead and profit when [it] issued payment to the Plaintiffs," (vi) "Defendants did not follow generally accepted insurance industry standards to make sure the Plaintiff[s] [were] compensated fully under the contract," (vii) "Defendant[']s staff needs to undergo extensive training in the handling of first party

2

property hail claims" and "[i]t was unreasonable for [Defendant] not to properly train and supervise [its] staff in the handling of this claim," (viii) Defendant's adjuster "breach[ed] . . . the standard of professionalism required of insurance adjusters" and "does not comprehend the concepts of functional vs. cosmetic damage," instead "appl[ying] a functional damage definition inconsistently in his adjustment," (ix) "[i]t is unreasonable for any insurer to cause damage to an insured's dwelling," and (x) Defendant violated various portion of the Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, §§ 1250.1 *et seq.* (the "UCSPA"), and did so not by mistake. Expert Report of Richard Cary 2-14, Doc. No. 30-1. Mr. Cary further summarizes his opinions:

> a. The Defendant['s] handling of this claim was unreasonable, outside of insurance industry standards, and inconsistent with good faith claims handling practices. The Defendant had a duty to conduct a thorough and reasonable investigation of the Plaintiffs' claim and pay promptly all sums due and owing under the contract. [Defendant] failed in [its] duty to do so.
> b. The refusal to issue payment for the ACV for the roof replacement was unreasonable.
> c. The Defendant failed to evaluate properly the damages resulting from the hail/windstorm and pay promptly . . . all monies due the Plaintiffs[,] which was unreasonable.
> e. It was unreasonable for the Defendant not to properly train [its] staff in the handling of first party covered property losses.
> f. The Defendant['s] failure to follow generally accepted industry standards as well as Oklahoma law was unreasonable.
> g. The Defendant failed to handle this claim in a manner consistent with good faith and fair dealing.

*Id.* at 14.[2]

---

[2] Mr. Cary's enumerated summary does not include a part (d).

3

## II. *Daubert* standard

Expert witness testimony is admissible if it meets the standard set forth in Federal Rule of Evidence 702: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education" can provide opinion testimony if:

> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and
> d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 requires the Court to fulfill a two-part "gatekeeping role." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). First, the Court must determine whether the expert witness is qualified. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). Second, if the proposed expert witness is sufficiently qualified, the Court must determine whether the expert witness's opinions are reliable and relevant such that the opinions will assist the trier of fact. *See id.* The *Daubert* standard applies regardless of whether the proposed witness offers scientific testimony or expert witness testimony of another type. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 149 (1999).

When the testimony of a proposed expert witness is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *See Nacchio*, 555 F.3d at 1241. Here, Defendant challenges only the relevance of Mr. Cary's proposed testimony. In reaching its *Daubert* determination, the Court has reviewed those portions of Mr. Cary's

Rule 26(a)(2) report that have been provided to the Court, as well as the legal arguments from both Plaintiffs and Defendant.[3] The Court addresses only those opinions of Mr. Cary which are challenged by Defendant in its motion.

### III.   Discussion and analysis

Many courts have found that juries are capable, with proper legal instructions from the Court, of evaluating whether an insurer acted in bad faith sans expert witness testimony regarding insurance-claims-handling standards and the reasonableness of a particular insurer's actions. *See, e.g.*, *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586-87 (10th Cir. 1998) (affirming district court's decision that "the jury was capable of determining the bad faith issue on its own"); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 940 (10th Cir. 1994) (affirming exclusion of expert witness who would compare "State Farm's actions to the industry standard and the laws of the State of Oklahoma" because of "the jury's competence to deal with the bad faith issue on its own" (quotation marks omitted)); *Am. Comm. Ins. Co. v. Harris*, No. CIV-07-423-SPS, 2009 WL 130225, at *1 (E.D. Okla. Jan. 16, 2009) (excluding testimony from an insurance adjuster because it would not assist the fact finder in understanding the evidence or determining a fact in issue and because the meaning of policy provisions was a matter for the court's determination). Defendant argues that to be the case here as well and asserts that certain

---

[3] Plaintiffs have not requested an evidentiary hearing, and the Court does not deem one necessary to resolve the issues presented. *See Nachio*, 555 F.3d at 1244 (indicating a party must present evidence of his expert witness's *Daubert* qualifications, reliability, and relevance in briefing or request an evidentiary hearing to establish the same if the Court does not set a *Daubert* motion for a hearing sua sponte).

of Mr. Cary's opinions should therefore be excluded.  In the particular circumstances of this case and based on its review of Mr. Cary's Rule 26(a)(2) report, the Court agrees somewhat with both Plaintiffs and Defendant.

Defendant argues that Mr. Cary should not be allowed to define an insurer's duty of good faith and fair dealing for the jury because doing so is the exclusive province of the Court.  On this point, Defendant is correct.  *See Magallan v. Zurich Am. Ins. Co.*, No. 16-CV-668-CVE-FHM, 2017 WL 4012964, at *10 (N.D. Okla. Sept. 12, 2017) ("[A]n expert may not attempt to define the law that a fact-finder must follow or direct the jury's understanding of the legal standards upon which [its] verdict must be based." (quotation marks and citation omitted)).  Defendant also argues that Mr. Cary should not be allowed to apply the facts of this case to his view of the law and thereby make the ultimate determination required of the jury.  Again, the Court agrees.  *See Thompson*, 34 F.3d at 940.  Mr. Cary will not be allowed to opine regarding the duties an insurer owes to an insured, what conduct is reasonable by an insurer, whether Defendant's actions were taken in good faith or in bad faith, whether Defendant's investigation of Plaintiffs' insurance claim was adequately thorough, whether Defendant's decision not to pay for replacement or significant repairs to Plaintiffs' roof was reasonable, what courts have held regarding the duty of good faith and fair dealing, or what he otherwise believes the law to be.  Mr. Cary should not use terms such as "bad faith," "good faith," "unfair," "unreasonable," "duty," or "required" in his testimony.  *See Magallan*, 2017 WL 4012964, at *10.  He may not equate a violation of an industry standard to bad faith.

Nor may Mr. Cary discuss the UCSPA or whether Defendant violated it. *See id.* The UCSPA "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing." *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 2015 OK CIV APP 34, ¶ 24, 348 P.3d 216, 223. In fact, the UCSPA "does not create a private remedy" at all because it "was designed to provide the Insurance Commissioner with the power to regulate the insurance industry by issuing 'cease and desist' orders or by revoking or suspending an insurance company's license to do business in Oklahoma." *Id.*

Defendant further argues that much of Mr. Cary's testimony will not assist the jury because he opines on issues which the jury may determine for itself. The Court agrees. Expert witness testimony is only permissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Some of Mr. Cary's proposed opinions will not do so. *See Carroll v. United States*, No. CIV-15-674-D, 2016 WL 10567693, at *1-2 (W.D. Okla. Dec. 16, 2016) (citing *Thompson*, 34 F.3d at 941) (excluding expert witness opinions that "are obvious to a lay person" for which "no specialized knowledge is needed"). Specifically, Mr. Cary may not opine regarding whether Defendant's adjuster's behavior was "professional" or whether certain terms or standards are included in the language of the homeowners' insurance policy at issue. The jury will be fully capable on its own of evaluating the appropriateness of Defendant's adjuster's behavior and of reading the insurance policy at issue and determining whether or not certain words appear therein. *See Bright v. Ohio Nat'l Life Assur. Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *2 (N.D. Okla. Jan. 9, 2013) ("The jury does not

need an expert to read the language of the policy."). Further, Mr. Cary's testimony on these subjects would result in "needless presentation" of cumulative evidence that substantially outweighs the probative value, if any, of his testimony. Fed. R. Evid. 403.

On the other hand, the Court agrees with Plaintiffs that Mr. Cary should be allowed to opine regarding standard insurance industry practices for inspecting roofs and, specifically, shingles. He may also opine regarding whether, in his experience, shingles with visible damage necessitate repairs or replacement—though he may not take the additional step suggested by Plaintiffs and opine regarding whether there is a "mention of 'functional' damage within the insurance contract" or whether "it is . . . reasonable to add wording to a policy after a loss occurs." Resp. 6, Doc. No. 32.[4] Thus, the Court adopts the following limitations for Mr. Cary's testimony: "[He] will be permitted to testify as to the custom and practice of the industry in investigating and handling of claims. . . . [and he] will be permitted to testify as to the considerations involved in evaluating an insured's claim, based on industry custom and practice and/or [his] own experience." *Payne v. Geico Indem. Co.*, No. CIV-01-1414-HE, 2002 WL 34439222, at *2 (W.D. Okla. May 17, 2002). Mr. Cary's challenged opinions will otherwise be excluded.[5]

---

[4] To the extent that Mr. Cary's opinion that "[i]t has long been held that granule loss caused by a hail impact equals a damaged shingle constituting loss" is based on judicial holdings, he may not recount or reference such judicial pronouncements. Expert Report of Richard Cary 2, Doc. No. 30-1. To the extent that his opinion's reference to what "has long been held" refers to industry standards, he may so opine.

[5] Defendant also argues that Mr. Cary should not be allowed "to offer his opinion as to whether [Defendant] violated its internal claim-handling guidelines." Mot. 18, Doc. No. 30. Mr. Cary does not indicate that he has reviewed Defendant's claim-handling guidelines in formulating his opinions in this case. *See* Expert Report of Richard Cary 14-15, Doc. No. 30-1 (indicating those materials reviewed by Mr. Cary). Mr. Cary's Rule 26(a)(2)

## IV.     Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Exclude the Testimony of Plaintiffs' Claim-handling/Bad Faith Expert, Richard N. Cary, or in the Alternative, Motion *in Limine* to Limit Mr. Cary's Testimony [Doc. No. 30] is GRANTED IN PART and DENIED IN PART as set forth herein.

IT IS SO ORDERED this 22nd day of August, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

report does not lead the Court to believe that Mr. Cary will offer such an opinion, so the Court need not address the issue at this time. The Court will do so at trial if needed. Mr. Cary will not be allowed to testify regarding matters outside the scope of the opinions included in his Rule 26(a)(2) report.